UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONRELL D. MURPHY,<br><br>                    Plaintiff,<br><br>     v.<br><br>C. PIERCE, et al.,<br><br>                    Defendants. | No.  2:21-cv-1789 TLN KJN P<br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

Plaintiff Monrell D. Murphy is a state prisoner, proceeding pro se and in forma pauperis, in a civil rights action pursuant to 42 U.S.C. § 1983 against defendants C. Pierce, J. Lopez, and J. Lebeck.[1] Defendants Pierce and Lebeck filed a motion to dismiss and request for judicial notice. (ECF Nos. 21, 23-26.)  As set forth below, defendants' motion to dismiss should be denied, ECF No. 21, and defendants' request for judicial notice is denied, ECF No. 21-2.

I. Plaintiff's Complaint

Plaintiff alleges that defendants Pierce, Lebeck, and Lopez violated his constitutional rights.  Specifically, he raises the following claims:  (1) Eighth Amendment excessive force claim

---

[1] Service of process against defendant Lopez was returned unexecuted.  (ECF Nos. 14 & 15.) Additionally, although the complaint contains allegations against a "defendant Ortega," ECF No. 1 at ¶¶11, 12, plaintiff failed to name Ortega as a defendant in the caption or in defendants' section of his pleading as required under Rule 10(a) of the Federal Rules of Civil Procedure.  As a result, Ortega has not been served with process.

1

against defendants Pierce, Lebeck, and Lopez; (2) Eighth Amendment deliberate indifference to plaintiff's serious mental health needs claim against defendant Pierce; and (3) First Amendment retaliation claim against defendants Pierce and Lebeck.  (ECF No. 1.)  Plaintiff seeks monetary damages.

Specifically, plaintiff alleges that on February 21, 2020, at California State Prison, Sacramento, he notified Pierce and Lebeck that he was "feeling suicidal."  (ECF No. 1 at 8.)  Pierce responded, "go ahead kill yourself, I dont care."  (Id.)  Lebeck also stated "I sure in the hell dont care, I dont think nobody would."  (Id.)  Plaintiff asked to speak with mental health staff but did not receive a response.  (Id.)  Without warning, plaintiff alleges that Pierce and Lebeck grabbed his wrists, lifted him up, and slammed him into the pavement, "coming down on his upper and lower back with their full weight."  (Id.)

"At no time did [plaintiff] resist Defendants Pierce and Lebeck."  (Id.)  While lying on the ground restrained, Pierce "repeatedly punched [] Plaintiff [in] the back of his head and upper torso" while Lebeck grabbed plaintiff's "scrotum and repeatedly yanked and twisted on them with violent force."  (Id.)  When Lopez arrived, he kicked plaintiff repeatedly in the legs.  (Id.)  After the beating, Lopez handcuffed and placed leg irons on plaintiff.  (Id. at 9.)  Lebeck stated "When we finish with your black ass you are gonna wish you was dead…you want to cry to the Ombudsman, we'll give you something to cry about."  (Id.)  Plaintiff felt threatened, understanding that Lebeck was referring to his prior interview with CDCR Obudsman Xina Bolden to report officer misconduct.  (Id.)

Because plaintiff was unable to stand due to his injuries, defendants placed plaintiff on a gurney and carried him to Facility B.  (Id.)  Pierce ordered plaintiff into a standing room only holding cell, and plaintiff notified him that "he was in extreme pain and needed medical attention."  (Id.)  Ignoring his pleas for help, Pierce said "get in the cage or Im gonna put you in head first."  (Id.)  Pierce allegedly grabbed plaintiff and violently slammed him into the holding cell.  (Id.)  Because plaintiff could not stand, defendants were unable to close the holding cell door and placed plaintiff back on the gurney to be taken to medical.  (Id. at 9-10.)

At medical, plaintiff was treated for his injuries, given pain medication, and instructed to

stay off his feet and rest.  (Id. at 10.)  Sometime later, plaintiff was transported back to Facility B on a gurney.  (Id. at 10.)  In Facility B, Pierce and Ortega allegedly grabbed plaintiff while he was restrained, slammed him into the back of another standing room only holding cell, and then put him back on the gurney.  (Id.)  Plaintiff told another correctional officer that he wanted to make an excessive force complaint.  (Id.)  Pierce then stated "you wanna [write] me up…Im gonna beat you to the punch and write you up for resisting and battery and send your monkey ass to the hole."  (Id.)  In response to plaintiff's statement that video cameras captured the incident, Pierce stated "o' I know how to set you up cause I know where all the blind spots are."  (Id.)

Plaintiff was allegedly taken to an isolation room where Pierce told other officers to "turn him on his belly, grab some sheets and tie his ass in a stress position."  (Id. at 11.)  When plaintiff was flipped on his belly, Pierce pummeled him in the back of the head.  (Id.)  After another officer tied him up, Pierce ordered "no tie it tighter around the ribs."  (Id.)  Pierce told a medical clinician that "Inmate Murphy says he suicidal…leave him tied up like this long enough and he will wish he was dead, but wont be able to move to do it."  (Id. at 12.)  Plaintiff said he was in pain and could not breathe, but the medical clinician responded, "you should have thought about that before you made custody mad."  (Id.)  For six hours, "plaintiff was left in said stress position with his hands handcuffed behind his back and leg shackled, [lying] face down on said gurney tied down with sheets [wrapped] around his body from his upper neck to his feet, that was so tight it labored his breathing and caused his body joints to burn with extreme pain."  (Id. at 11.)  He was subsequently transferred to administrative segregation, and sometime after, plaintiff attempted suicide.  (Id.)

Defendants Pierce and Lebeck filed a motion to dismiss the complaint, arguing that all of plaintiff's claims are barred by the favorable termination rule under Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1997).  (ECF No. 21; see also ECF No. 26.)  They claim that "if [plaintiff] Murphy were to prevail on his excessive force, deliberate medical indifference, and retaliation claims here, it would be fundamentally inconsistent with his prison disciplinary proceeding for battery on peace officer and willfully resisting a peace officer in the performance of duty of the same incident, which resulted in a guilty finding and a loss of nearly

3

1 200 days of credit." (Id. at 1-2.) Plaintiff objects to the motion to dismiss. (ECF No. 24.)

2 In support of their motion, defendants Pierce and Lebeck filed a request for judicial notice of the following documents: (1) the rules violation report finding plaintiff guilty of battery on a peace officer issued on February 21, 2020, for which plaintiff lost 135 days of good credits that were not restored; (2) the rules violation report finding plaintiff guilty of willfully resisting a peace officer issued on February 21, 2020, for which plaintiff lost 61 days of good credits that were not restored; (3) two incident packages created in connection with the two rules violation reports noted above; and (4) the abstract of judgment from plaintiff's underlying criminal conviction. (ECF No. 21-2, see also ECF No. 25.) Plaintiff objects to the request for judicial notice. (ECF No. 23.)

II. Legal Standards for Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, plaintiff must allege enough facts to state a plausible claim for relief. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)

(internal quotes and citation omitted), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002). There are two exceptions that prevent any extrinsic evidence from converting the Rule 12(b)(6) motion into a summary judgment motion; materials which are properly submitted as part of the complaint or "matters of public record" which may be judicially noticed. Id. at 688-89. "If the documents are not physically attached to the complaint, they may be considered if the documents' "'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them.'" Id. at 688 (quoting Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998).

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Board of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

III. Discussion

    A. Motion to Dismiss First and Eighth Amendment Claims

Defendants argue that plaintiff's excessive force, deliberate indifference to serious mental health needs, and retaliation claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997). In Heck, the Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. at 486-87. This is called the favorable termination rule. In Edwards v. Balisok,

the Supreme Court applied the favorable termination rule in a § 1983 action claiming damages and equitable relief for a procedural defect in a prison's administrative process used to deprive plaintiff of good-time credits. Edwards, 520 U.S. at 648 ("We conclude, therefore, that respondent's claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983.").

The Supreme Court has warned, however, that Heck does not apply "categorically to all suits challenging prison disciplinary proceedings." Muhammad v. Close, 540 U.S. 749, 751 n.1 (2004) (per curiam); see also Nonnette v. Small, 316 F.3d 872, 875 n.3 (9th Cir. 2002) ("A prisoner who seeks damages only for being subjected to unconstitutional procedures, without implying the invalidity of (or seeking damages for) the resulting loss of good-time credits, may proceed under § 1983 without first invalidating his disciplinary proceeding."); Nettles v. Grounds, 830 F.3d 922, 934-35 (9th Cir. 2016) (en banc) ("Success on the merits of [plaintiff's] claim would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole.") "Rather, the applicability of the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." Ramirez v. Galaza, 334 F.3d 850, 856 (9th Cir. 2003); see also Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005); Wilkerson v. Wheeler, 772 F.3d 834, 840 (9th Cir. 2014).

The Ninth Circuit has found that some § 1983 cases alleging excessive force used by police officers were not barred by Heck because defendants could have used excessive force before or after plaintiff engaged in the conduct that resulted in the conviction or prison disciplinary proceedings. For example, in Smith v. City of Hemet, 394 F.3d 689, 699 (9th Cir. 2005) (en banc), the Ninth Circuit explained that "a § 1983 action is not barred under *Heck* unless it is clear from the record that its successful prosecution would *necessarily* imply or demonstrate that the plaintiff's earlier conviction was invalid." It concluded that the claim was not barred by Heck because it was unclear from the record whether the actions that underlay plaintiff's

conviction occurred before or after his arrest. Id. (emphasis in originl).  As another example, in Hooper v. County of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011), the Ninth Circuit concluded that "a conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'"  See also Sanders v. City of Pittsburg, 14 F.4th 968, 971 (9th Cir. 2021) ("[I]f the alleged force occurred *before* or *after* the acts that form the basis of the §148(a) violation, even if part of one continuous transaction, the § 1983 claim" is not barred under Heck); Burgess v. Raya, 690 F. App'x 483 (9th Cir. 2017) (emphasis in original).

Here, defendants argue that plaintiff's version of events is "inconsistent" with the findings made at the prison disciplinary proceedings and the guilty findings of battery on a police officer and willfully resisting a police officer in the performance of duty. (ECF No. 21 at 8; see also id. ("Indeed, if Murphy prevails in this action and proves these facts in support of his claim for excessive force (i.e., that he followed all of Defendants' orders and that he was the innocent victim of an unprovoked attack), it would necessarily imply the invalidity of his guilty finding for battery on a peace officer and willfully resisting a peace officer in the performance of duty."); ECF No. 26.)  This Court disagrees.  The success of plaintiff's action would not necessarily invalidate the guilty findings of battery or willfully resisting a police officer.  See, e.g., Brownlee v. Murphy, 231 F. App'x 642 (9th Cir. 2007).  The willfully resisting a peace officer charge was based on plaintiff's refusal to return to his cell and to submit to restraints. (ECF No. 21-4 at Ex. B at 24.)   The factual basis for the battery on a peace officer finding is plaintiff kicking Pierce in the left ankle while he was being secured in a standing only holding cell.  (ECF No. 21-4 at Ex. A at 3.)

This Court finds that plaintiff's claim are not barred by Heck.  In his § 1983 complaint, plaintiff alleges three causes of action all of which contain allegations of unlawful conduct by defendants that occurred before or after the conduct underlying plaintiff's disciplinary charges. See, e.g., Puckett v. Zamora, No. 12-cv-00948, 2015 WL 757330, at *4 (E.D. Cal. Feb. 23, 2015). First, his Eighth Amendment cruel and unusual punishment claim includes allegations that defendants used excessive force after he was restrained by two officers while lying belly down on

7

the ground. (See, e.g., ECF No. 1 at 8 (Pierce repeatedly punched him in the back of the head and upper torso; id. (Lebeck grabbed his scrotum and "repeatedly yanked and twisted on them with violent force); id. (Lopez repeatedly kicked plaintiff in the legs)). After the factual basis for the battery charge, plaintiff also alleges that defendants slammed him into another holding cell and another gurney before tying him in a stress position for six hours. (Id. at 10-11.) Second, in his Eighth Amendment deliberate indifference to serious medical needs claim, plaintiff asserts that after being tied up, Pierce states that "Inmate Murphy says he [is] suicidal…leave him tied up like this long enough and he will wish he was dead, but wont be able to move to do it." (Id. at 12.) Despite telling the officers that he was in pain and could not breath, he was "locked in an isolation room without supervision, restrained and bound by sheets…for approximately six hours, during which time he struggled to keep conscious from lack of breath and experience extreme pain throughout his body." (Id.) Lastly, in his First Amendment retaliation claim, plaintiff claims that defendants used excessive force in retaliation against the prior report that plaintiff made regarding officer misconduct. (Id. at 9 (while lying on the ground, the officers beat him up and placed handcuffs and leg irons on him and stated "[w]hen we finish with your black ass you are gonna wish you was dead…you want to cry to the Ombudsman, we'll give you something to cry about."); see also id. at 14.)

Like in Hooper, plaintiff has alleged a factual scenario for his § 1983 claims that is not mutually exclusive with the prison disciplinary findings. As was the case in Hooper, defendants restrained plaintiff in one continuous chain of events, which involved two separate factual predicates, the first giving rise to plaintiff's disciplinary infractions, and the second giving rise to defendants' potential civil liability. Accepting all of the factual allegations in the complaint as true and construing them in plaintiff's favor, this Court finds that plaintiff has plausibly alleged that defendants acted in violation of the Eighth and First Amendments. Because plaintiff could prevail on his § 1983 claims without implying the invalidity of plaintiff's prison disciplinary infractions, Heck does not apply, and defendants' motion to dismiss the action as Heck-barred should be denied.

////

B. Defendants' Request for Judicial Notice

In support of their motion to dismiss, defendants request that this Court take judicial notice of five documents. (ECF No. 21-2, see also ECF No. 25.) Plaintiff objects to the request for judicial notice. (ECF No. 23.) Federal Rule of Evidence 201(b) provides that a federal court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute" if the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See also Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001). Because this Court recommends that defendants' motion to dismiss be denied, this request is denied as moot.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that defendants' request for judicial notice (ECF No. 21-2) is denied; and

IT IS RECOMMENDED that defendants' motion to dismiss (ECF No. 21) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 26, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/ta/murp1789.mtd.H

9